Norman O. DEAL and Jean Deal *v.* FARM BUREAU MUTUAL INSURANCE COMPANY OF ARKANSAS, INC.

CA 93-1129                                              889 S.W.2d 774

Court of Appeals of Arkansas
Division II
Opinion delivered December 14, 1994
[Rehearing denied March 1, 1995.*]

---

*Bullion, S.J., joins; Whitmore, S.J., would grant rehearing.

*David P. Rawls*, for appellant.

*Laser, Sharp, Mayes, Wilson, Bufford & Watts, P.A.*, by: *Richard N. Watts* and *Brian Allen Brown*, for appellant.

MELVIN MAYFIELD, Judge. This is an appeal from a summary

judgment. On May 17, 1989, appellant Norman Deal made application with the appellee Farm Bureau Mutual Insurance Company of Arkansas, Inc. (Farm Bureau) for fire insurance in the amount of $20,000.00 to cover a mobile home and its contents belonging to him and his wife, appellant Jean Deal. A policy was subsequently issued naming Norman and Jean Deal as insured.

On September 15, 1990, the mobile home and its contents were destroyed by fire. Farm Bureau advanced appellants $2,000.00 under the policy. Later, after receiving several anonymous phone calls to the effect that in 1976 Norman Deal had intentionally set fire to a mobile home in which he resided, Farm Bureau filed a complaint against Normal Deal for declaratory judgment asking for a declaration that the policy was void.

In its complaint Farm Bureau alleged that the application for the policy asked "Has anyone in household had any fire losses?"; that Norman Deal responded "no"; that he signed the application certifying all statements were true and correct; and that based upon his responses a policy of insurance was issued. Farm Bureau alleged that after it issued the policy, it learned that Norman Deal had made a material misrepresentation regarding his prior fire losses; that it would not have issued the policy had it been advised of the fire loss; and that the misrepresentation was intentional and material and voided coverage.

Appellant Norman Deal filed an answer and counterclaim denying any material misrepresentation regarding the 1976 fire and requesting payment under the policy. He stated that no claim was made to any insurance company for the items destroyed in the 1976 fire and that, based upon his understanding of the information requested, his answer on the 1989 policy application was truthful and correct.

Appellant Jean Deal, as a co-owner of the property covered by the policy, filed a motion to intervene, which was subsequently granted by the court, and a counterclaim for sums due under the policy.

Both parties filed motions for summary judgment. In support of its motion Farm Bureau filed a brief arguing that had it known the true facts of Norman Deal's loss history, it would not have issued the policy; that his misrepresentation was material

to the risk involved; and that it had relied upon the misrepresentation. Further it argued no coverage is provided for the applicant, or his spouse, who acts fraudulently, makes false statements, or conceals or misrepresents any material fact or circumstance relating to the insurance coverage.

Appellants, on the other hand, argued the term "fire losses" is ambiguous as a matter of law and was reasonably interpreted by Norman Deal to mean damages that were claimed from an insurance company. Because he was not asked any questions about previous fires or previous burning until after the September 15, 1990 fire, Deal argued he made no material misrepresentation. Moreover, appellants argued Jean Deal's rights should not be voided because she made no representations; did not sign or ratify the application; and neither concealed nor misrepresented any material fact or circumstance.

After a hearing held June 8, 1993, the trial court granted Farm Bureau's motion for summary judgment and held the term "fire losses" is not ambiguous and Norman Deal was acting as Jean Deal's agent in making application.

On appeal appellants argue the trial court erred in finding Norman Deal made a material misrepresentation because the term "fire losses" is ambiguous.

■■ Motions for summary judgment are governed by Ark. R. Civ. P. 56 which provides that a judgment may be entered if the pleadings, depositions, answers, interrogatories, and admissions on file, in addition to affidavits, show there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is an extreme remedy and should be granted only when it is clear that there is no issue of fact to be decided. *Johnson* v. *Stuckey & Speer, Inc.*, 11 Ark. App. 33, 665 S.W.2d 904 (1984). Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable men might differ. *Prater* v. *St. Paul Insurance Company*, 293 Ark. 547, 739 S.W.2d 676 (1987).

■ If the language in a policy is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two or more interpretations, one favorable to the insured

and the other favorable to the insurer, the one favorable to the insured will be adopted. *Drummond Citizens Ins. Co.* v. *Sergeant*, 266 Ark. 611, 588 S.W.2d 419 (1979). *See also Farm Bureau Mutual Ins. Co.* v. *Milburn*, 269 Ark. 384, 601 S.W.2d 841 (1980).

Among other definitions, *Websters Third New International Dictionary* 338 (1976) defines the word "loss" as: "6: the amount of an insured's financial detriment due to the occurrence of a stipulated contingent event (death, injury, destruction or damage) in such a manner as to charge the insurer with a liability under the terms of the policy." Definitions for the word "loss" included in *The American Heritage Dictionary* 743 (2nd college ed. 1982) include: "7. The amount of a claim on an insurer by an insured."

And, in construing a statute regarding the proper venue in which to bring suit for loss against an insurer, our supreme court said that the word "loss" has an established meaning in the field of insurance which is "Death, injury, destruction, or damage in such a manner as to charge the insurer with a liability under the terms of the policy." *American Republic Life Insurance Co.* v. *Cummings, Judge*, 218 Ark. 888, 890, 239 S.W.2d 10, 11-12 (1951).

■■ The initial determination of the existence of an ambiguity rests with the court, and if ambiguity exists then parol evidence is admissible and the meaning of the ambiguous term becomes a question for the fact-finder. *C & A Construction Co.* v. *Benning Construction Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974). In the instant case, we believe the word "loss" used in the appellee's application for insurance is at least ambiguous and the trial court erred in holding to the contrary and in granting summary judgment.

The appellee has cited *Home Insurance Company of New York* v. *Cavin*, 137 So. 490 (Miss. 1931), and *Sirvint* v. *Fidelity & Deposit Co. of Maryland*, 242 App. Div. 187, 272 N.Y.S. 555 (N.Y.1934), aff'd, 195 N.E. 164 (1934), in support of its argument that the word "loss" is clear and unambiguous. But, in *Sirvint* it was the phrase "loss or damage" that was found to be unambiguous. The case of *Home Insurance*, where the court held the question "Have you ever suffered loss by fire" presents a closer case, but we are not bound by a decision of the Mississippi court.

Appellants have also argued that the trial court erred in voiding the policy as to Jean Deal because there was no evidence she was a party to any misrepresentation or that Norman Deal had the authority to act as her agent.

The appellees argue the trial court was correct in voiding the policy as to Jean Deal. In support of this contention appellees cite *Johnson v. Truck Insurance Exchange*, 285 Ark. 470, 688 S.W.2d 728 (1985), in which appellee says "a somewhat similar circumstance arose." In that case the appellants, a mother and son, obtained a jury verdict in a suit brought on their homeowners policy to recover the value of a dwelling destroyed by fire. The insured son had three fires prior to the one in question and there was proof that he may have knowingly given a false answer when asked whether similar insurance had ever been canceled or denied. The trial court granted a new trial and the supreme court affirmed. There was an argument that the insured mother should have had a directed verdict in her favor because she was innocent of wrongdoing. Our supreme court discussed the issue in some detail and then stated:

> We will not attempt to settle that issue here. For one thing, apart from the separate consideration of her innocence with respect to arson, the jury could have concluded this policy would not have been issued in the first instance if Charles Johnson, acting for himself and Laura Johnson, had given truthful answers concerning the cancellation of similar insurance.

285 Ark. at 476, 688 S.W.2d at 732.

Likewise, we will not decide this issue in this appeal. We do not know what will happen on retrial; we do not know what proof will be presented; we do not know what instructions will be offered or given; and we do not know that this issue will even arise again.

Reversed and remanded for a new trial on the issues.

COOPER and ROBBINS, JJ., agree.